

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

BOBBY LEE SMITH,
      Plaintiff,

V.

Case No. CN-25-588

OKLAHOMA ATTORNEY GENERAL'S OFFICE,
GENTNER DRUMMOND, in his official capacity,
MICHAEL JAMES HUNTER, in his individual capacity,
NIKKI KIRKPATRICK, in her individual capacity,
HOPE BRYANT, in her individual capacity,
JOHN and JANE DOES 1–10,
      Defendants.

**FILED**

JUN 0 2 2025

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Pursuant to 42 U.S.C. § 1983 and Related Claims)

| | |
|---|---|
| COMPLAINT FOR VIOLATION OF CIVIL RIGHTS | 1 |
| I. INTRODUCTION | 2 |
| II. JURISDICTION AND VENUE | 3 |
| III. PARTIES | 4 |
| Plaintiff | 4 |
| Defendants | 4 |
| IV. FACTUAL BACKGROUND | 5 |
| V. TIMELINESS OF CLAIMS AND ONGOING VIOLATIONS | 7 |
| 1. Continuing Violation Doctrine | 7 |
| 2. Malicious Prosecution Accrual | 8 |
| 3. Delayed Discovery Rule | 8 |
| 4. Defamation and Ongoing Harm | 9 |
| 5. Ongoing Consequences | 9 |
| Conclusion | 9 |
| VI. PATTERN OF MISCONDUCT | 10 |
| 1. Abuse of Prosecutorial Discretion | 10 |
| 3. False Public Narrative and Defamation by Omission | 10 |
| 4. Ongoing Publication and Refusal to Retract | 10 |
| 5. Institutional Retaliation and Civil Rights Violations | 11 |
| 6. Chilling of Redress and Suppression of Truth | 11 |
| VII. CLAIMS FOR RELIEF | 11 |
| COUNT I | 11 |
| COUNT II | 12 |

COUNT III                                                                            13
COUNT IV                                                                             13
COUNT V                                                                              14
COUNT VI                                                                             14
COUNT VII                                                                            15
VIII. PRAYER FOR RELIEF                                                              16
A. Declaratory Relief                                                                16
B. Injunctive Relief                                                                 16
C. Compensatory Damages                                                              17
D. Punitive Damages                                                                  17
E. Costs, Fees, and Other Equitable Relief                                           18
IX. PREEMPTIVE DEFENSES AND REBUTTALS                                                18
1. Sovereign Immunity (Official Capacity Claims)                                     18
2. Prosecutorial Immunity (Individual Capacity Claims)                               18
3. Qualified Immunity                                                                19
4. Statute of Limitations                                                            19
6. Lack of Personal Involvement or Knowledge                                         20
X: CLOSING STATEMENT                                                                 20
MASTER EXHIBIT LIST                                                                21-23

## I. INTRODUCTION

Plaintiff Bobby Lee Smith, appearing *pro se*, respectfully submits this civil rights Complaint pursuant to 42 U.S.C. § 1983, seeking compensatory and punitive damages, declaratory and injunctive relief, and such other remedies as the Court deems just. This action arises from a sustained and deliberate campaign of malicious prosecution, defamation, constitutional violations, and administrative obstruction by the Oklahoma Attorney General's Office (OKAG) and its agents, including former Attorney General Mike Hunter, current Attorney General Gentner Drummond, and Assistant Attorneys General Nikki Kirkpatrick and Hope Bryant, each sued in their individual capacities. The misconduct spans from 2020 through the present and has caused irreparable harm to Plaintiff's livelihood, reputation, and constitutional rights.

In January 2020, Plaintiff was arrested, falsely charged with ten felonies, and publicly defamed under Case No. CF-2020-42, based on materially incomplete and misleading information (Exhibit 6). Despite possessing exculpatory evidence, including financial records (Exhibit 5), business filings (Exhibit 3), and proof of forged check signatures, the OKAG proceeded with charges accusing Plaintiff of operating a fraudulent construction company, Ultimate Roofing and Construction (URC). In contrast, corporate records listed Crystal Smith, Plaintiff's former spouse and business partner, as the registered agent and operator of URC. Crystal was granted full immunity in September 2020, and all charges against her were dismissed, yet nearly identical charges were refiled solely against Plaintiff on July 8, 2021 (Exhibit 7).

Plaintiff's then-counsel, Michael Johnson, confirmed in multiple recorded calls from late 2021 through early 2022 that the AG's Office had no new evidence to justify the refiling (Exhibits 16,17,18,19,& 20). Johnson also disclosed the existence of an eight-page internal memo authored by Assistant AG Hope Bryant, which

concluded that no criminal conduct had occurred. That memo was never released to the public but directly influenced the dismissal of all charges against Plaintiff on January 10, 2022 (Exhibit 9) .

Rather than acknowledge Plaintiff's innocence, the Oklahoma Attorney General's Office continued to promote a false narrative that the dismissal resulted from "new evidence." This misrepresentation was propagated to the media, including through a documented January 8, 2023 email from Deputy AG Ethan Shaner to journalist Brittany Harlow of VerifiedNewsNetwork, which falsely implied unresolved criminal liability(Exhibit 30). The AG's Office never corrected this statement. As a result, defamatory reporting remained live and uncorrected through at least May 2025.

The consequences of this sustained misconduct have been profound and ongoing. Plaintiff has suffered:

- Severe reputational damage and public vilification (Exhibits 11, 12);

- Emotional distress and mental anguish;

- Loss of income, professional opportunities, and charitable prospects ( Exhibits 16 & 17) ;

- Denial of banking services, including account closures by Chase Bank and Bank7 in 2024 (Exhibit 14);

- Filing of Chapter 7 bankruptcy in 2022 ( Exhibit 10);

- Loss of critical years with his children and deterioration of family relationships (Exhibit 8).


Despite pursuing every available administrative channel, including Open Records Act (FOIA) requests(Exhibit 22, 28, 29, 31), a Writ of Mandamus (Exhibit 26 & 27), and a formal complaint to the U.S. Department of Justice Civil Rights Division, Plaintiff has been consistently stonewalled, misled, or ignored by the AG's Office. No public retraction has been issued. No correction has been made. The defamation persists.

This Complaint asserts violations of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and seeks accountability for what has become a six-year campaign of reputational sabotage, prosecutorial abuse, and bureaucratic cover-up. The Western District of Oklahoma is now the only forum available to restore Plaintiff's name, rights, and dignity through judicial relief.


## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction), because this action is brought under federal law, specifically 42 U.S.C. § 1983, to redress the deprivation of rights secured by the United States Constitution and federal statutes.

Venue is proper in the Western District of Oklahoma pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including Plaintiff's arrest, prosecution, public defamation, and subsequent harm.

Plaintiff further notes that because Defendant Nikki Kirkpatrick, a former Assistant Attorney General and a named Defendant in this action, is now a sitting federal judge in the Western District of Oklahoma, and because Plaintiff previously filed a related writ in Oklahoma County Case No. CV-2025-662, the Oklahoma Supreme



Court issued an order on April 16, 2025 (SCAD-2025-20)(Exhibit 26), reassigning the case to Judge Jeff Virgin of Cleveland County to avoid conflicts of interest. Plaintiff includes this information for transparency and preservation of judicial integrity, and anticipates that similar recusals of all Oklahoma County judges may be necessary in this action as well.

## III. PARTIES

### Plaintiff

Bobby Lee Smith is a resident of Oklahoma and a citizen of the United States. At all relevant times, Plaintiff was the subject of a malicious prosecution, unconstitutional administrative obstruction, public defamation, and an ongoing deprivation of constitutional rights. These acts were committed by state officials acting under color of law and caused significant harm to Plaintiff's liberty, livelihood, and reputation. Plaintiff brings this action *pro se* under 42 U.S.C. § 1983 and related state law claims.

### Defendants

1. Oklahoma Attorney General's Office (OAG)
   The OAG is a state agency headquartered in Oklahoma City, Oklahoma, tasked with prosecuting criminal offenses and enforcing consumer protection laws. It is named as a Defendant for purposes of declaratory and injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908), to the extent that it continues to obstruct Plaintiff's rights and maintain a false public narrative. The OAG is also the *custodian of records subject to the Oklahoma Open Records Act and is responsible for the wrongful* denial and suppression of FOIA materials related to Plaintiff.

2. Gentner Drummond, in his official capacity
   Defendant Drummond is the current Attorney General of Oklahoma. He is sued in his official capacity for ongoing injunctive and declaratory relief, including correction of the public record, compliance with FOIA obligations, and cessation of administrative obstruction and retaliatory acts. Although he did not initiate the underlying prosecution, his office has actively perpetuated the harm through non-responsiveness, misattribution of dismissal causes, and refusal to correct prior constitutional violations.

3. Mike Hunter, in his individual capacity
   Defendant Hunter is the former Attorney General of Oklahoma who oversaw the initial investigation and prosecution of Plaintiff in 2020. He is sued in his individual capacity for initiating charges without probable cause and for directing or authorizing the publication of misleading public statements that portrayed Plaintiff as guilty. His conduct includes deliberate disregard of exculpatory material and dissemination of defamatory narratives. Hunter resigned from office in June 2021 amid unrelated controversy.                                                          .

4. Ada Nikki Kirkpatrick, in her individual capacity
   Defendant Kirkpatrick is a former Assistant Attorney General who signed and filed the original felony charges against Plaintiff on January 6, 2020. She granted immunity to co-defendant Crystal Smith in September 2020 without any public explanation and failed to correct the public record. On October 22, 2020, she met with Plaintiff and his then-attorney, Terri Phillips, to review exculpatory evidence. Her actions were investigatory and administrative, not protected by judicial immunity. Kirkpatrick has since been appointed as a federal judge in the Western District of Oklahoma, creating a potential conflict of



interest in this venue.

5.  Hope Bryant, in her individual capacity
    Defendant Bryant is an Assistant Attorney General who, on July 8, 2021, refiled charges against Plaintiff in an Amended Information, despite her own findings later memorialized in an eight-page internal memorandum concluding that no crime had occurred and recommending dismissal. Her actions were administrative and investigatory in nature and directly contributed to the continued malicious prosecution of Plaintiff without probable cause. She is sued in her individual capacity under 42 U.S.C. § 1983.

6.  John and Jane Does 1–10, in their individual capacities
    These are unidentified individuals affiliated with the Oklahoma Attorney General's Office who participated in the creation, approval, dissemination, or concealment of false and defamatory statements about Plaintiff.

    ○  John Does 1–5 are believed to have authored or authorized press releases, emails, and public statements that maintained a false narrative following the dismissal of charges.

    ○  Jane Does 6–10 are believed to have denied FOIA requests, withheld responsive records, and participated in the obstruction of exculpatory disclosures.

These unnamed individuals will be identified through discovery and are sued in their individual capacities for their direct roles in the violations of Plaintiff's constitutional rights.

## IV. FACTUAL BACKGROUND

In January 2020, the Oklahoma Attorney General's Office ("OKAG"), led by then-Attorney General Mike Hunter, filed Case No. CF-2020-42 in Oklahoma County, charging Plaintiff Bobby Lee Smith and his former spouse, Crystal Louann Marie Smith, with ten felony counts, five of home repair fraud and five of embezzlement (see Exhibit 6). The charges, signed by Assistant Attorney General Nikki Kirkpatrick, falsely alleged that the two jointly operated Ultimate Roofing and Construction (URC) as a fraudulent enterprise, accepting upfront payments and failing to complete contracted work. From inception, the case was built on misrepresentations and omissions of material fact.

Official business records filed with the Oklahoma Secretary of State identified Crystal Smith as the sole registered agent and operational controller of URC (Exhibit 1)and(Exhibit 3). She held TERO certification and was recognized as a Choctaw Nation-certified contractor. In line with (exhibit 4) email to URC team, Crystal managed all contracts and finances, while Plaintiff, who held only a 5% stake for licensure purposes (Exhibit 2), had no operational control. In fact, Plaintiff invested over $66,000 of his personal funds from Tinker Federal Credit Union beginning in 2018 to rescue the financially collapsing business (Exhibit 5).

Despite these facts, the OKAG ignored clear exculpatory evidence in its possession, including:

●  Bank records showing Crystal withdrew $32,500 in cash, including $20,000 in February 2019;

●  Documentation proving Bobby Smith's signature was forged on at least 41 checks;

●  Unpaid subcontractor invoices despite funds being available, implicating Crystal directly.

On September 29, 2020, the OKAG dismissed all charges against Crystal Smith, granting her full immunity after a private meeting between her attorney, Chris Sloan, and the AG's Office. As confirmed by Plaintiff's counsel, Michael Johnson, in a recorded call dated December 21, 2021(Exhibit 18):

> "They walked in... and she walked out with immunity. No fight, no argument—it was already agreed to."

Following Crystal's immunity, Plaintiff met with Kirkpatrick on October 22, 2020, accompanied by attorney Terri Phillips, and presented exculpatory records including financial data, bank statements, and affidavits. Rather than dismiss the case, Kirkpatrick threatened Plaintiff with 75 years in prison. In a May 16, 2025 conversation with Assistant AG Jacy Sullivan, Plaintiff recalled(exhibit 33):

> "She had everything in front of her, but still chose to pursue charges."

After AG Hunter resigned in June 2021, the case was reassigned. On July 8, 2021, Assistant AG Hope Bryant refiled charges against Plaintiff using the same language from the 2020 filing, without any new evidence (Exhibit 7). In a December 21, 2021 recording, Johnson confirmed (Exhibit 19):

> "There was no new evidence. This is just a cover-up."

The case proceeded to preliminary hearing on September 3, 2021. The prosecution's credibility unraveled: multiple alleged victims could not identify Plaintiff, with one misidentifying an unrelated person in the courtroom. Plaintiff later recounted to Sullivan in 2025(Exhibit 33):

> "They didn't have a clue who I was."

By late 2021, Bryant authored a confidential eight-page internal memorandum concluding that no crime had occurred and recommending dismissal. Johnson confirmed in a December 22, 2021 call (Exhibit 19):

> "Hope went to her supervisor and said, 'Why the hell are we prosecuting this? He didn't do it.'"

Despite this, no public correction followed. On January 10, 2022, the charges were dismissed "in the interest of justice," but no retraction, apology, or explanation was issued (Exhibit 9). The original press-driven narrative, based on OKAG news releases, remained active and unchallenged by media outlets such as KOCO, The Oklahoman, and FOX 25(Exhibit 11)(Exhibit 12).

On January 8, 2023, Deputy AG Ethan Shaner doubled down on the false narrative, sending a defamatory email to journalist Brittany Harlow, stating in ORA 68 Production (exhibit 30):

> "We could not prove beyond a reasonable doubt that Mr. Smith had the requisite criminal intent…"

This phrasing implied lingering suspicion, despite the AG's internal findings confirming Plaintiff's innocence.

The damage was ongoing and severe:

- In 2020, Plaintiff was arrested, booked, and required to post a $50,000 bond;

- He lost custody of his children and suffered irreparable damage to parental relationships(Exhibit 8) ;

- In 2022, he filed Chapter 7 bankruptcy due to litigation-related economic fallout (exhibit 10);

- In 2024, he was debanked by both Chase Bank and Bank7, citing reputational risk from uncorrected AG press releases(Exhibit 14);

- He was denied housing, employment, and credit, and was ostracized socially.

In a recorded October 5, 2021 call, Bobby told his attorney(Exhibit 16):

"Crossroads reopened my account fraudulently... At what point do I become the consumer?"

In February 2025, Plaintiff submitted a records request to the Oklahoma County District Attorney's Office (OKDA), which promptly produced internal documents and email communications with the OKAG (Exhibit 24). These same records had been withheld or denied by the Oklahoma Attorney General's Office in response to nearly identical FOIA and Open Records Act requests, further demonstrating the AG's pattern of selective nondisclosure and administrative obstruction. From 2022 to 2025, Plaintiff pursued every available remedy:

- Filed multiple FOIA and Open Records Act requests(Exhibits 22, 24, 28, 29, and 31);

- Submitted a Writ of Mandamus (CV-2025-662)( Exhibit 26 & 27), resulting in judicial reassignment due to conflict with Defendant Kirkpatrick;

- Filed a Tort Claim Against the OKAG on February 17, 2025 (Claim # 2520035181)(Exhibit 23, 24, and 25) in which was ultimate denied on May 09, 2025 (Exhibit 32)

- Filed a formal civil rights complaint with the U.S. Department of Justice, which was acknowledged but declined for further action.

On May 16, 2025, Plaintiff spoke with AAG Sullivan again, pleading:

"I need the truth to be known out there... I'm 100% innocent."

While Sullivan acknowledged the enduring damage, stating, *"Charges change lives forever"*, the OKAG still refused to issue a statement affirming Plaintiff's innocence(Exhibit 33).

In January 2025, the AG's Office finally acknowledged Plaintiff's right to expungement but continued to withhold key records, including Bryant's internal memo. No public statement or record correction has been issued as of the filing of this Complaint.

On May 22, 2025, Plaintiff filed a sworn affidavit in Oklahoma County District Court (Case No. CJ-2025-1843) formally attesting to his innocence, the defamatory impact of the AG's conduct, and the constitutional injuries sustained over a five-year period (Exhibit 34).


V. TIMELINESS OF CLAIMS AND ONGOING VIOLATIONS

Plaintiff's claims are timely under the continuing violation doctrine, the delayed discovery rule, and the favorable termination rule that governs malicious prosecution. Defendants' misconduct, including defamatory

public statements, obstruction of record access, and concealment of exculpatory evidence, has continued well into 2025, causing ongoing harm to Plaintiff's reputation, liberty, and economic opportunities.

1. Continuing Violation Doctrine

   A. Under *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982), a continuing violation occurs when wrongful conduct extends into the limitations period, even if it began earlier. The Oklahoma Attorney General's Office and its agents engaged in an uninterrupted pattern of unlawful conduct, including:

      a. Public promotion of a false criminal narrative from 2020 through 2025(Exhibit 12).

      b. Misleading media and the public with statements falsely suggesting guilt or unresolved fraud (Exhibit 30).

      c. Denial of records that would have allowed Plaintiff to pursue expungement or rebut the allegations(Exhibit 31 & 32).

   B. Specific examples of ongoing violations include:

      a. January 8, 2023: Deputy Attorney General Ethan Shaner, in an email to journalist Brittany Harlow of Verified News Network (Exhibit 30), wrote:

         "After conducting part of Mr. Smith's preliminary hearing, his attorney provided additional records... We could not prove beyond a reasonable doubt that Mr. Smith had the requisite criminal intent."

      b. He then encouraged further complaints, stating:
         "She [Harlow's source] can also submit a consumer complaint to our office if she feels she has been the victim of deceptive or misleading conduct."

      c. February 8, 2024 (Exhibit 15): Plaintiff formally requested removal and correction of a defamatory article published on the Attorney General's website entitled *"Attorney General Hunter Files Home Repair Fraud Charges on Husband and Wife Duo."* The article, which accused Plaintiff and his former partner of bilking over $313,000 from victims, remained publicly available through at least February 2024. In response, the OKAG stated:

         "While the charges were dismissed, this office does not control the expungement of court records... If the records are ultimately expunged and notice is provided to us, we will take steps to remove the linked news release."

      d. Sometime after February 2024, the article was silently removed without notice to Plaintiff or public clarification. The Attorney General's Office has refused to state when the removal occurred or to issue any correction to the public record (Exhibits 21, 22, 28, 29, and 31). This concealment sustains the injury caused by the original publication and the State's failure to acknowledge its falsity.

2. Malicious Prosecution Accrual



Under *Wallace v. Kato*, 549 U.S. 384 (2007), and *Heck v. Humphrey*, 512 U.S. 477 (1994), a malicious prosecution claim accrues upon favorable termination of the criminal case. Plaintiff's charges were dismissed on January 10, 2022. However, this claim remains timely under the doctrine of equitable tolling and continuing violation principles, because:

- Defendants withheld exculpatory internal records, including an eight-page memo by Hope Bryant, until well after the dismissal;

- The AG's Office continued misrepresenting the basis for dismissal as recently as March 2025 in communications with media and third parties;

- Plaintiff was actively pursuing relief through FOIA requests going back to 2022, a writ of mandamus (CV-2025-662), and federal complaints, all met with obstruction;

- The AG's failure to issue a correction or retraction has prolonged reputational and legal harm.

Equitable tolling applies when a defendant's wrongful conduct prevents timely filing. The AG's concealment of critical facts, misstatements to the public, and refusal to correct the record justify tolling through 2025.

3. Delayed Discovery Rule

Even after dismissal, Plaintiff could not fully discover the scope of Defendants' misconduct until: 2023–2025: Through FOIA and Open Records Act productions (including ORA 68), Plaintiff received emails revealing that the AG's Office misrepresented the basis for dismissal and suppressed the 2021 internal memo from Assistant AG Hope Bryant acknowledging the lack of criminal intent.

The email from Deputy AG Ethan Shaner in 2023, and the AG's public refusal to retract or explain misleading information, further delayed Plaintiff's ability to seek relief.

Under Oklahoma law and federal standards, limitations are tolled until the plaintiff has reason to know of the injury and its cause, particularly when concealed by the government.

4. Defamation and Ongoing Harm

Oklahoma imposes a one-year limitations period for defamation under 12 O.S. § 95(A)(4). However, this claim is timely because:

A. The AG article remained live until at least Mid 2024, within one year of the filing of this Complaint.

B. The AG's refusal to confirm when it was removed or issue a retraction creates ongoing reputational harm.

C. The 2023 thru 2025 Shaner emails and its republication by Verified News Network, KOCO, and more remain public, defamatory, and uncorrected as of 2025.

D. The republication doctrine applies to each instance of continued distribution or affirmation of defamatory content. Removal of the article without retraction also supports an inference of continuing harm and bad faith.

5. Ongoing Consequences

As of 2025, Plaintiff continues to suffer direct consequences of Defendants' conduct:

      A.  Refusal of Legal Aid in June 2022 due to ambiguous AG posture(Exhibit 13).

      B.  Denial of expungement relief, despite AG acknowledgment of dismissal.

      C.  Ongoing denial of credit and banking services, including account closures by Chase and Bank7 in 2024(Exhibit 14).

      D.  Public perception and reputational harm based on the AG's refusal to correct its statements(Exhibit 30).

Conclusion

The claims in this Complaint are timely under the continuing violation doctrine, the delayed discovery rule, and the accrual date of the malicious prosecution claim. Defendants' attempts to assert statute of limitations defenses would not only lack legal merit but would also reinforce their pattern of obstruction and refusal to accept responsibility.

## VI. PATTERN OF MISCONDUCT

The actions of the Oklahoma Attorney General's Office (OAG) and its agents from 2020 to the present are not isolated mistakes, but a sustained pattern of misconduct involving malicious prosecution, deliberate misrepresentation, suppression of exculpatory evidence, and ongoing reputational harm through government-sanctioned defamation. This pattern spans two administrations, multiple Assistant Attorneys General, and a persistent refusal to rectify known falsehoods, even after charges were dismissed.

1. Abuse of Prosecutorial Discretion

- The original January 2020 charges were filed against Bobby Smith and Crystal Smith based on unfounded allegations of a criminal enterprise, despite clear documentation showing Crystal was the business owner and Bobby had limited financial control.

- Prosecutors had access to exculpatory evidence, including bank records, financial summaries, affidavits, and forged check documentation, as early as October 2020, but ignored it.

- Crystal Smith was quietly granted full immunity in September 2020, shielding her from accountability while leaving Bobby to face public and legal persecution alone.

2. Retaliatory Refiling and Suppression of Exculpatory Evidence

- After the resignation of AG Mike Hunter in 2021, the OAG refiled charges against Bobby Smith on July 8, 2021, under Assistant AG Hope Bryant, using nearly identical language and no new evidence.

- The case proceeded to a September 3, 2021 preliminary hearing, despite internal knowledge that no crime had occurred.

- Following that hearing, Bryant authored a confidential internal memo acknowledging there was no legal basis to continue prosecuting Plaintiff, a memo that was never made public.

- Plaintiff's FOIA requests for this memo and related communications were denied, and the AG's Office falsely claimed it had produced *all* responsive documents.

3. False Public Narrative and Defamation by Omission

- Even after the case was dismissed on January 10, 2022, the OAG refused to publicly correct the record.

- In January 2023, Deputy AG Ethan Shaner provided false statements to journalist Brittany Harlow, misrepresenting the dismissal as based on "new records" rather than the original evidence reviewed years earlier.

- These false statements were used to justify continued suspicion and caused third parties to publicly question Plaintiff's integrity.

4. Ongoing Publication and Refusal to Retract

- The AG's Office maintained a defamatory article on its official website until at least February 2024 and has refused to state when or why it was removed.

- News organizations including KOCO, KFOR, The Oklahoman, and FOX 25 refused to retract or correct their stories, citing reliance on the AG's Office as their source(exhibit 12).

- Plaintiff was forced to file defamation lawsuits in 2025 to attempt to repair the public record—a direct consequence of the AG's refusal to act in good faith.

5. Institutional Retaliation and Civil Rights Violations

- Plaintiff was debanked by Chase and Bank7 due to reputational damage caused by the AG's false narrative.

- He was denied assistance by Legal Aid in June 2022, as the dismissal was not clearly marked as exonerative.

- Multiple FOIA requests were obstructed, and the AG's Office has refused to identify its own registered agent, explain its defamatory email to Harlow, or comply with lawful records requests.

- In 2025, when Plaintiff filed a Writ of Mandamus (CV-2025-662), the assigned judge was recused due to prior involvement by Nikki Kirkpatrick, and the matter had to be reassigned by the Oklahoma Supreme Court.

6. Chilling of Redress and Suppression of Truth



- Plaintiff has had to expend substantial resources pro se to correct falsehoods the State refuses to acknowledge.

- The AG's Office continues to argue against disclosure, accountability, and correction, relying on procedural defenses while avoiding factual resolution.

- Even when confronted with recorded conversations proving their narrative is false, the AG's Office has taken no steps to amend the public record.

This misconduct is not a one-time lapse; it is an ongoing abuse of state authority intended to protect the Office's reputation at the expense of Plaintiff's liberty, livelihood, and dignity. The pattern rises to a level that shocks the conscience and warrants compensatory, injunctive, and punitive relief.

## VII. CLAIMS FOR RELIEF

## COUNT I

42 U.S.C. § 1983 – Malicious Prosecution
*(Against Defendants Mike Hunter, Nikki Kirkpatrick, Hope Bryant, and John/Jane Does in their individual capacities)*

- Plaintiff realleges and incorporates all prior paragraphs.

- Defendants, acting under color of state law, instituted and continued a criminal prosecution against Plaintiff without probable cause and with malice, in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments.

- The prosecution was initiated in 2020 under Defendant Kirkpatrick, continued in 2021 under Defendant Bryant, and maintained despite the absence of evidence and the presence of exculpatory material.

- Plaintiff was arrested, detained, publicly defamed, and forced to defend against baseless charges for nearly two years.

- The case was dismissed on January 10, 2022, without plea, conviction, or settlement, and no public retraction or correction was ever issued.

- Defendants acted with reckless disregard for the truth and in concert with other agents of the State, using the criminal process for improper political, personal, or institutional motives.

WHEREFORE, Plaintiff seeks compensatory damages, punitive damages, declaratory relief, and attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT II

42 U.S.C. § 1983 – Violation of Due Process
*(Fabrication of Evidence / Suppression of Exculpatory Evidence)*
*(Against Defendants Kirkpatrick, Bryant, and John/Jane Does in their individual capacities)*

- Plaintiff was deprived of liberty and property interests without due process of law, in violation of the Fourteenth Amendment.

- Defendants failed to disclose Brady material, including:

    - Exculpatory financial documents,

    - Internal memos (including the 8-page memorandum by Bryant), and

    - Immunity arrangements with Crystal Smith.

- Plaintiff made lawful FOIA and Open Records requests which were obstructed, ignored, or falsely denied.

- These acts were intentional, malicious, and designed to prevent Plaintiff from obtaining fair process and to protect the AG's Office from embarrassment or liability.

WHEREFORE, Plaintiff seeks injunctive and declaratory relief, damages, and all other relief deemed just and proper.

COUNT III

42 U.S.C. § 1983 – Violation of First Amendment Rights
*(Retaliation and Suppression of Redress)*
*(Against the Oklahoma Attorney General's Office and all individual Defendants)*

- Plaintiff exercised his right to petition the government by filing FOIA requests, court motions, and a Writ of Mandamus to uncover misconduct.

- In retaliation, Defendants obstructed access to records, misled media outlets, and failed to correct false public narratives.

- These retaliatory actions had a chilling effect on Plaintiff's ability to seek redress and undermined public confidence in open government.

WHEREFORE, Plaintiff requests declaratory and injunctive relief, including public retraction, and damages pursuant to § 1983.

COUNT IV

Defamation and Defamation by Implication (Oklahoma Common Law)
*(Against Mike Hunter, Ethan Shaner, and the AG's Office)*

- Defendants published, facilitated, or failed to retract knowingly false statements that Plaintiff:

    - Defrauded homeowners,

13

- ○ Committed embezzlement, or

- ○ Acted with criminal intent.

- These statements were:

  - ○ Made to the press,

  - ○ Maintained on official state websites, and

  - ○ Sent via direct email to media organizations and third parties as late as 2023.

- Defendants knew or should have known the charges were dismissed based on lack of evidence—not due to new discoveries or partial guilt.

- These actions caused:

  - ○ Widespread reputational harm,

  - ○ Loss of income,

  - ○ Denial of financial services, and

  - ○ Public ostracism.

WHEREFORE, Plaintiff seeks general, special, and punitive damages, and an order mandating formal public correction by the AG's Office.

COUNT V

Declaratory and Injunctive Relief
*(28 U.S.C. §§ 2201–2202)*
*(Against all Defendants)*

- Plaintiff seeks a declaration that the prosecution, publications, and refusals to correct or disclose records violated his constitutional rights.

- Plaintiff further seeks an injunction requiring the Attorney General's Office to:

  - ○ Issue a public retraction and exoneration statement;

  - ○ Produce unredacted records and emails related to CF-2020-42;

  - ○ Amend internal procedures to prevent similar misconduct.

WHEREFORE, Plaintiff requests all equitable relief necessary to restore his reputation and constitutional standing.

COUNT VI

42 U.S.C. § 1983 – Civil Conspiracy to Violate Constitutional Rights
*(Against Defendants Hunter, Kirkpatrick, Bryant, and John Jane Does)*

- Defendants, acting under color of law and in concert, conspired to initiate and sustain a baseless criminal prosecution against Plaintiff with the shared goal of:

  - Shielding Crystal Smith, and

  - Protecting the reputation of the Oklahoma Attorney General's Office.

- This conspiracy included:

  - Withholding exculpatory evidence;

  - Misleading the press and public;

  - Refiling charges without probable cause;

  - Falsely attributing the dismissal to new evidence;

  - Obstructing Plaintiff's attempts to clear his name through FOIA and court filings.

- Overt acts in furtherance of the conspiracy include:

  - Refiling charges under Bryant after Kirkpatrick's promotion;

  - Misstating reasons for dismissal to the press (e.g., Shaner's 2023–2025 emails);

  - Ignoring FOIA requests that would have exposed the immunity deal and 8-page memo;

  - Sending misleading responses to journalists even after the dismissal.

WHEREFORE, Plaintiff seeks compensatory and punitive damages, and declaratory relief that Defendants acted jointly to violate his constitutional rights.


COUNT VII

42 U.S.C. § 1983 – Supervisory Liability for Constitutional Violations
*(Against Mike Hunter and other supervisory Defendants in their individual capacities)*

- Defendant Mike Hunter, as Attorney General, had supervisory authority over the Assistant Attorneys General who investigated, charged, and prosecuted Plaintiff.

- Hunter either directed, approved, or knowingly ignored the unconstitutional actions of his subordinates, including:

  - ○ Failing to ensure accurate evidence review before charges were filed;

  - ○ Permitting or encouraging the refiling of charges despite exculpatory materials;

  - ○ Issuing or allowing defamatory public statements to the press;

  - ○ Refusing to issue corrections after dismissals.

- This lack of oversight constituted deliberate indifference and was a proximate cause of the violations suffered by Plaintiff.

WHEREFORE, Plaintiff seeks damages and equitable relief against Defendant Hunter in his individual capacity.


VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bobby Lee Smith respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

A. Declaratory Relief

- A declaration that Defendants' actions violated Plaintiff's constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution;

- A declaration that Plaintiff is entitled to expungement under Oklahoma law based on:

  - ○ Full dismissal of all charges,

  - ○ Absence of criminal intent, and

  - ○ The Attorney General's own internal exculpatory findings;

- A declaration that Defendants engaged in a continuing pattern of malicious prosecution, retaliatory conduct, obstruction of lawful record requests, and defamation, in both official and unofficial capacities.

B. Injunctive Relief

An order compelling the Oklahoma Attorney General's Office to:

- Issue formal written retractions and public corrections to all media outlets, government agencies, consumer boards, and individuals who received or relied on defamatory statements about Plaintiff;

- Notify each outlet that the dismissal was based on pre-existing evidence and lack of probable cause, not new evidence;

- Remove or amend any documents, web content, or internal records that suggest Plaintiff remains under investigation or that the charges had merit;

- Disclose and produce all previously withheld records responsive to Plaintiff's Open Records Act and FOIA requests, including but not limited to:

  - Internal communications,

  - Policy memos,

  - Press strategy emails, and

  - The immunity agreement granted to Crystal Smith;

- Cease all public statements that misrepresent the basis for dismissal or imply wrongdoing by Plaintiff;

- Comply with a preservation order requiring all Defendants and relevant state personnel to retain and protect all:

  - Emails,

  - Notes,

  - Recordings,

  - Legal files, and

  - Internal memoranda related to:

    - Case No. CF-2020-42,

    - Plaintiff's FOIA requests,

    - The refiling of charges, and

    - Press or public-facing communications regarding Bobby Lee Smith.

## C. Compensatory Damages

Compensatory damages for all losses caused by Defendants' actions, including:

- Financial losses and economic harm;

- Damage to reputation and standing in the community;

- Emotional distress, embarrassment, and public humiliation;

- Lost employment, housing, and professional opportunities;

- Out-of-pocket legal and investigative expenses;

- Costs associated with bond, bankruptcy, and denial of banking services;

- Time lost from Plaintiff's children's upbringing and irreparable personal losses due to stigma and social isolation.

D. Punitive Damages
- Punitive damages against Defendants Mike Hunter, Nikki Kirkpatrick, and Hope Bryant, each in their individual capacities, for acting with:

    ○ Actual malice,

    ○ Fraud, and

    ○ Deliberate indifference to Plaintiff's constitutional rights.

E. Costs, Fees, and Other Equitable Relief
- An award of reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 1988, should Plaintiff retain counsel or otherwise become entitled;

- Equitable relief including but not limited to:

    ○ Restoration of Plaintiff's legal and civil reputation in state and federal records;

    ○ A permanent injunction barring the Oklahoma Attorney General's Office from making any further defamatory or misleading statements concerning Plaintiff;

    ○ A directive requiring notification to all relevant courts, agencies, and licensing boards of Plaintiff's full exoneration;

    ○ Oversight or monitoring by a federal agency or independent body if deemed necessary to ensure ongoing constitutional compliance by the Oklahoma Attorney General's Office.

- Any other relief that this Court deems just and proper in law or equity.


## IX. PREEMPTIVE DEFENSES AND REBUTTALS

Plaintiff anticipates that Defendants may assert various defenses in an effort to evade accountability for their misconduct. To streamline judicial efficiency and preserve the factual and legal integrity of this case, Plaintiff respectfully addresses and rebuts the most likely defenses below:

1. Sovereign Immunity (Official Capacity Claims)

Defendants may argue that the Oklahoma Attorney General's Office is immune from suit under the Eleventh Amendment. However, Plaintiff seeks only prospective injunctive and declaratory relief against the Office and

Attorney General Gentner Drummond in his official capacity, consistent with the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908). Plaintiff does not seek damages from the State itself but rather equitable relief to correct ongoing constitutional violations. Thus, sovereign immunity does not apply.

## 2. Prosecutorial Immunity (Individual Capacity Claims)

Defendants Kirkpatrick, Bryant, and Hunter may assert absolute prosecutorial immunity. However, absolute immunity does not apply to administrative, investigatory, or public-relations conduct, as established in *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), and *Kalina v. Fletcher*, 522 U.S. 118 (1997). The misconduct in question, refiling charges without new evidence, withholding Brady materials, making defamatory press statements, and obstructing FOIA compliance, falls outside the scope of core prosecutorial functions. Accordingly, Defendants are only entitled to qualified immunity at most, which is rebutted below.

## 3. Qualified Immunity

To defeat qualified immunity, Plaintiff need only show that Defendants violated clearly established constitutional rights of which a reasonable official would have known. The right to:

- Be free from prosecution without probable cause,

- Access exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963),

- Petition the government without retaliation,

- Avoid government-sponsored defamation that causes tangible harm,
  has long been established. Defendants' misconduct was not a close call, it involved knowingly false public statements, intentional suppression of internal exonerating memoranda, and deliberate obstruction of Plaintiff's ability to obtain expungement and reputational restoration. Qualified immunity should be denied.

## 4. Statute of Limitations

As detailed in the Timeliness of Claims section, all claims are timely based on the following principles:

- Malicious Prosecution accrues upon favorable termination (*Heck v. Humphrey*, 512 U.S. 477 (1994)); Plaintiff's charges were dismissed on January 10, 2022.

- Equitable Tolling applies due to Defendants' active concealment of evidence and ongoing misrepresentations through 2025.

- Continuing Violation Doctrine applies to the ongoing refusal to correct the public record, repeated defamatory statements, and continued suppression of FOIA records.

- Delayed Discovery Rule applies to FOIA disclosures and internal AG emails obtained between 2023 and 2025 revealing the scope of misconduct and falsity of public statements.
  Even defamation claims, normally subject to a one-year limit, are timely due to the republication doctrine and the AG's active refusal to retract statements that remained online through 2024.

## 5. Failure to State a Claim

Plaintiff has pled detailed factual allegations that support each element of his constitutional and state law claims, including:

- Specific dates of actions and omissions,

- Named individuals and their roles,

- Documented harm and public injury,

- Direct causal links between conduct and injury,

- Legal citations supporting each theory of liability.
  Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), Plaintiff's complaint not only "states a plausible claim" but provides evidentiary support and factual specificity that exceeds minimum federal pleading standards.

6. Lack of Personal Involvement or Knowledge

Defendants may attempt to disclaim personal involvement. However, the record reflects:

- Hunter's supervisory role and public statements launching the charges;

- Kirkpatrick's authorship of the original Information and role in denying dismissal despite exculpatory evidence;

- Bryant's authorship of both the Amended Information and the later internal memo acknowledging no crime;

- Shaner's email to the media in 2023 mischaracterizing the dismissal as a compromise.
  This lawsuit identifies specific, direct, and intentional conduct by each named Defendant—none of whom acted passively or without knowledge.

## X: CLOSING STATEMENT

This lawsuit is the culmination of over five years of defamation, abuse of prosecutorial power, constitutional violations, and systemic obstruction. Plaintiff Bobby Lee Smith has exhausted every administrative and legal channel to seek truth, transparency, and justice. Defendants in the Oklahoma Attorney General's Office deliberately chose to maintain a false narrative long after the dismissal of criminal charges, knowing it would cause ongoing damage to Plaintiff's life and livelihood.

Despite possessing conclusive exculpatory evidence, including financial records, affidavits, and internal communications, Defendants refused to acknowledge the truth. They did not correct the record. They did not retract their statements. They did not apologize. Instead, they willfully obstructed lawful record requests, misled the public through coordinated media releases, and promoted a knowingly false narrative to preserve their reputations and avoid accountability.

These actions were not isolated missteps. They represent a calculated, continuous abuse of power that spanned multiple administrations. Assistant Attorneys General acted without regard for law or ethics. They used the machinery of the State to destroy an innocent man's name, career, and future, while shielding others from scrutiny, including their own colleagues and informants.

Even Oklahoma Legal Aid declined to help Plaintiff pursue expungement, citing the Attorney General's refusal to clarify the circumstances of the dismissal. The ripple effect of this refusal has contaminated Plaintiff's credit, housing, employment, and standing in the community. The lies were not simply published, they were institutionalized.

Plaintiff has been forced to represent himself through pro se filings, public record demands, and civil rights petitions, all while the State, with unlimited resources and legal counsel, doubled down on its misconduct. In Writ of Mandamus Case No. CV-2025-662, every judge in Oklahoma County was expected to recuse due to conflict or prior involvement, requiring Supreme Court reassignment. That recusal pattern underscores the systemic entanglement and corruption this lawsuit now challenges.

This is not just a plea for personal justice. It is a demand for institutional reckoning. If a government can fabricate, conceal, and perpetuate falsehoods against one citizen without consequence, then no citizen is safe. *The federal judiciary now stands as the final guardian of due process and the Constitution in this matter. Only* this Court can restore Plaintiff's name, prevent further harm, and send an unambiguous message that no official is above the law, especially those sworn to uphold it.

Respectfully submitted,

Dated: June 2nd, 2025

BOBBY LEE SMITH
Plaintiff, Pro Se
1612 N Pennsylvania Ave
Oklahoma City, OK 73107
405-863-8584
nfd1288@gmail.com

MASTER EXHIBIT LIST

1. URC Purchase Agreement (June 13, 2014) – Agreement granting Crystal Smith 51% ownership of Ultimate Roofing and Construction.
2. Employment Contract (September 1, 2017) – Contract showing Bobby Smith retained only 5% ownership for licensing purposes.
3. Oklahoma Secretary of State (July 16, 2014)- Showing Crystal as Owner/Operator

4. Gmail from Crystal Smith (December 5, 2018) – Email to URC team affirming Crystal as the operational point of contact.
5. Banking Summary (September 1, 2017 – April 24, 2019) – Financial records showing company withdrawals and cash movements.
6. Initial Indictment (January 6, 2020) – Charging document filed by Nikki Kirkpatrick in Case No. CF-2020-42.
7. Refiled Indictment (July 8, 2021) – Amended Information signed by Hope Bryant without new evidence.
8. Initial Divorce Opinion of Charles Gass(November 19, 2021)- Removed from home and changed custody arrangement of kids ultimately leading to minimal to no physical contact with children.
9. Dismissal Order (January 10, 2022) – Official dismissal of all charges against Bobby Smith.
10. Chapter 7 Bankruptcy (March 18, 2022 - March 12, 2024)- Bobby bankruptcy filing
11. Defamatory Article by OKAG (January 2020 – Mid 2024) – AG's press release falsely portraying Plaintiff as guilty; remained online for over four years.
12. Third-Party News Coverage (2020 – Present) – Media articles from Insurance Journal, News 9, KOCO, and KOKH continuing to circulate defamatory narrative.
13. Gmail of Legal Aid (June 15, 2022) denying to help expunge OKAG false indictment
14. Chase bank closures (December 20, 2024) Debanking of Bobby, 222,LLC, and his 501 c 3 Mobile Health for All Foundation
15. Gmail to OKAG (February 8, 2024) – Plaintiff's formal request to redact false statements from OKAG press release.
16. Transcript with Attorney Johnson (October 5, 2021) – Discussion regarding Crossroads account and banking fraud.
17. Transcript with Attorney Johnson (November 1, 2021) – Follow-up on pretrial strategy and AG misconduct.
18. Transcript #1 with Attorney Johnson (December 21, 2021) – Attorney confirms immunity deal for Crystal and refiling with no new evidence.
19. Transcript #2 with Attorney Johnson (December 21, 2021) -- Commentary on cover-up and refusal to dismiss.
20. Transcript with Attorney Johnson (January 7, 2022) -- Confirmation that charges would be dismissed "Monday."
21. Gmail to AG Drummond (January 2, 2025) -- Request for correction of defamation and public exoneration.
22. Gmail ORA 31 Request & Denial (February 17, 2025) – FOIA request seeking internal documents; denied.
23. *Tort Claim Notification (February 17, 2025) -- Initial notice to OKAG under Oklahoma Governmental Tort Claims Act.*
24. OKDA FOIA (February 11 & 24, 2025) - OKDA released information the OKAG says they will not.
25. Amended Tort Claim #2 (April 14, 2025) – Follow-up submission with new evidence and demands.
26. Writ of Mandamus & Motions (March 18 – May 15, 2025) – State court filings in CV-2025-662 seeking FOIA compliance.
27. Gmail Serving Writ and Amended Tort Claim #1 (March 18, 2025) – Email confirming service of Writ of Mandamus to OKAG.

28. Gmail ORA 56 Request (March 18, 2025) – Additional public records request submitted to OKAG.

29. Gmail ORA 68 Request (March 31, 2025) – Public records request for internal communications.

30. ORA 68 Production (April 2, 2025) – Responsive documents provided by OKAG, including internal emails.

31. Gmail ORA Denial (May 2, 2025) – Refusal to provide key internal memo and press-related communications.

32. Tort Claim Denial (May 9, 2025) – Official rejection of Plaintiff's tort claim by the Oklahoma AG.

33. Transcript with AAG Jacy Sullivan (May 16, 2025) – Recording of Plaintiff requesting written exoneration; Sullivan acknowledges AG's silence.

34. Affidavit of Bobby Smith (May 22, 2025) – Filed in Oklahoma County District Court, Case No. CJ-2025-1843, affirming factual innocence and harm.